IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ANTHONY HENDERSON, )
)
Plaintiff, )
v. ) No. 14 C 1164
)
CITY OF CHICAGO et al, ) Judge Virginia M. Kendall
)
Defendants. )

# MEMORANDUM OPINION AND ORDER

After Chicago police arrested an individual, he provided them with information implicating a man named "Tony" in drug dealing and gave them information about where Tony sold drugs. The police used that information to obtain a search warrant for "Tony's" house and arrested plaintiff Anthony Henderson at the location described by the arrestee who is considered a confidential informant. At the preliminary hearing stage, the judge found no probable cause existed to arrest Henderson and dismissed the case. Henderson now sues alleging that his Constitutional rights were violated from the arrest and search of both his person, two cars, and the apartment. At this stage, four counts remain: a claim brought under 42 U.S.C. § 1983 for the search of the apartment, Henderson, and his vehicles (Count II); false arrest (Count III); false imprisonment (Count IV); and malicious prosecution (Count V). (Dkt. No. 24.) The Defendants filed a motion for partial summary judgment as to Counts II, III, IV, and V. (Dkt. Nos. 68, 69.) The Court grants Defendants' motion for summary judgment leaving claims against Defendants Kyle Mingari and Khaled Shaar[1] in Count II for the search of the vehicles, Defendant Mark

---

[1] Defendants clarified that this Defendant spells his name "Shaar" not "Sharr". (Dkt. No. 69 at n.1)

1

Gutkowski in Counts III and IV, and Defendants David Guzman and Gutkowski in Count V. (Dkt. No. 68.)

## BACKGROUND

The following facts are undisputed unless otherwise noted. On September 24, 2013, Gutkowski—a Chicago police officer—was on duty and arrested John Doe.[2] (Def. 56.1 ¶¶3, 7; Pl. 56.1 Resp. ¶¶3, 7.) While in custody, Doe told Gutkowski that someone named Tony was storing large quantities of heroin in the second floor apartment of a corner building above a storefront at West 59th Street and Rockwell Avenue and also selling the heroin from the same location. (Def. 56.1 ¶8; Pl. 56.1 Resp. ¶8; Pl. 56.1 Resp., Ex. 10 at 10:2-8.) Doe described Tony to Gutkowski as a 45-year old male black with short black hair, medium complexion, 6'3'' tall, and 265 pounds. (Def. 56.1 ¶9; Pl. 56.1 Resp. ¶9.) Doe further told Gutkowski that he had purchased heroin from Tony multiple times over the past 18 months; specifically, that he had purchased heroin from Tony three times in the last week and had been to the second floor apartment within the past 24 hours to buy heroin from Tony. (Def. 56.1 ¶10; Pl. 56.1 Resp. ¶10.) Doe reported to Gutkowski that Tony stored heroin in a Dorito's bag. (Def. 56.1 ¶11; Pl. 56.1 Resp. ¶11.) No promises were made to Doe in exchange for providing Gutkowski with this information. (Def. 56.1 ¶12; Pl. 56.1 Resp. ¶12.) Prior to that day, Gutkowski had not met Doe and had never relied on him as a confidential informant. (Pl. 56.1 Resp. ¶61; Def. 56.1 Resp. to Pl. Add. Facts ¶13.)

After this conversation with Doe, Gutkowski researched the location that Doe had described, printed out pictures of the residence in question, and showed them to Doe for identification. (Def. 56.1 ¶13; Pl. 56.1 Resp. ¶13.) Gutkowski also retrieved pictures of

---

[2] The parties refer to this individual as both John Doe and Jay Doe. For the purposes of this order, the Court will identify him as John Doe.

surrounding buildings near West 59th Street and Rockwell Avenue. *Id.* After viewing these pictures, Doe identified the building on the southeast corner of West 59th Street and Rockwell Avenue as the location where Tony was storing and selling heroin. (Def. 56.1 ¶14; Pl. 56.1 Resp. ¶14.) Doe identified the second floor apartment above the storefront at 2600 West 59th Street as the precise location of the purchases. *Id.* Gutkowski investigated the identity of Tony by researching individuals who had been arrested or claimed residency at the address identified by Doe and searching for service calls and contact cards to find matches for the nickname "Tony."[3] (Def. 56. 1 Ex. B at 11:20-22; 13:17-21.) Based on this research, Gutkowski concluded that Henderson was "Tony" as identified by Doe. *Id.* at 11:20-24; 13:17-21. Gutkowski then printed out a picture of Henderson and other individuals and showed them to Doe. *Id.*; Def. 56.1 Ex. C at ¶4. After reviewing these pictures, Doe identified Henderson as "Tony." Def. 56.1 Ex. C at ¶4.

Based on the information provided by Doe, Gutkowski drafted a search warrant which Assistant State's Attorney Daniel Hanichuk signed. (Def. 56.1 ¶¶19, 20; Pl. 56.1 Resp. ¶¶19, 20.) Gutkowski brought Doe to Circuit Court Judge James O'Hara who reviewed the application for the search warrant and questioned Doe. (Def. 56.1 ¶21; Pl. 56.1 Resp. ¶21.) Judge O'Hara signed the search warrant at 8:57 p.m. on September 24, 2013. *Id.* He issued the search warrant based on probable cause that evidence of drug dealing would be present at the place to be searched and commanding the search of Henderson and the second floor residence at 2600 West 59th Street. (Def. 56.1 ¶22; Pl. 56.1 Resp. ¶22.)

---

[3] Henderson attempts to refute this fact by citing to the deposition of Guzman which only establishes that Guzman did not conduct this research but does not refute that Gutkowski did so. This fact is therefore accepted as undisputed because it was not refuted by Henderson.

Defendants Stec, Guzman, Shaar, Mingari, Matthews, McKenna, and Gutkowski executed the search warrant as a team.[4] (Def. 56.1 ¶23; Pl. 56.1 Resp. ¶23.) They met beforehand and Gutkowski told them Henderson's height, weight, complexion, hair, and age. (Def. 56.1 ¶24; Pl. 56.1 Resp. ¶24.) The officers proceeded to 2600 West 59th Street and forced entry into the second floor apartment to execute the search warrant. (Def. 56.1 ¶25; Pl. 56.1 Resp. ¶25.) Henderson, Reba Rodwell, and Robert Rodwell were in the apartment while the officers executed the search warrant. (Def. 56.1 ¶27; Pl. 56.1 Resp. ¶27.) During the search, two cars owned by Henderson—a 1996 Chevy Astro and a 1997 Cadillac DeVille—were parked outside the apartment. (Def. 56.1 ¶28; Pl. 56.1 Resp. ¶28.) Henderson saw a white officer with a beard take Henderson's car keys, leave the apartment, and go downstairs. (Def. 56.1 ¶29; Pl. 56.1 Resp. ¶29.) He then heard his car alarm go off but he did not see what the officer did with his keys or any other officers leave with that officer. *Id.* Gutkowski, Guzman, Stec, Vance, McKenna, Matthews, and Geisbush did not search either of Henderson's vehicles during the execution of the search warrant. (Def. 56.1 ¶30; Pl. 56.1 Resp. ¶30.) According to Henderson, a white officer with a beard searched his person. (Def. 56.1 ¶31; Pl. 56.1 Resp. ¶31.) Gutkowski recalls searching Henderson at some point during the underlying events. *Id.* Stec, Shaar, Mingari, Matthews, McKenna, Vance, Geisbush, and Guzman did not search Henderson. (Def. 56.1, Ex. E at ¶6, Ex. F at ¶6, Ex. G at ¶6, Ex. H at ¶6, Ex. I at ¶6, Ex. K at ¶6, Ex. L at ¶6, Ex. P at ¶2.) The officers recovered one bag of suspect heroin stored in a Ziploc bag found inside a potato chip bag, a hand-rolled cigarette containing cannabis, a digital scale, one grinder, and ten .22 caliber rounds from inside the apartment. (Def. 56.1 ¶33; Pl. 56.1 Resp. ¶33.) Gutkowski handcuffed Henderson and read him his rights. (Def. 56.1 ¶40; Pl. 56.1 Resp. ¶40.)

---

[4] In their Rule 56.1 statements, the parties do not address the date of the search; however, it is apparent from Henderson's deposition that it took place on the same day: September 24, 2013. (Def. 56.1 at Ex. M, 16:2-3.)

Henderson was charged with possession of a controlled substance. (Def. 56.1 ¶41; Pl. 56.1 Resp. ¶41.) Guzman prepared the arrest report stemming from Henderson's arrest on September 24, 2013. (Def. 56.1 ¶42; Pl. 56.1 Resp. ¶42.) Gutkowski prepared the Narcotics Supplementary Report about the execution of the search warrant and signed the criminal complaint against Henderson. (Def. 56.1 ¶¶43, 45; Pl. 56.1 Resp. ¶¶43, 45.) The Illinois State Police crime tested the drug items recovered from the apartment and reported that they tested positive for heroin. (Def. 56.1 ¶44; Pl. 56.1 Resp. ¶44.) Stec, Shaar, Mingari, Matthews, McKenna, Vance, and Geisbush did not participate in the decision to bring criminal charges against Henderson or any of his criminal proceedings. (Def. 56.1 ¶45; Pl. 56.1 Resp. ¶45.) A preliminary hearing was held on October 15, 2013, during which Gutkowski testified as the sole witness that he found a bag of suspect heroin in a potato chip bag during the search of the apartment. (Def. 56.1 ¶¶46, 47; Pl. 56.1 Resp. ¶¶46, 47.) At the conclusion of the hearing, the state court judge found no probable cause for the criminal charge against Henderson and dismissed the case. (Def. 56.1 ¶48; Pl. 56.1 Resp. ¶48.)

On September 24, 2013, Henderson did not live in the second floor apartment at 2600 West 59th Street and was not listed on the lease as a tenant there. (Def. 56.1 ¶¶34, 35; Pl. 56.1 Resp. ¶¶34, 35.) Rather, that day Reba and Robert Rodwell lived in the apartment. (Def. 56.1 ¶36; Pl. 56.1 Resp. ¶36.) Reba was Henderson's girlfriend. (Def. 56.1 ¶37; Pl. 56.1 Resp. ¶37.) Henderson visited Reba at the apartment and spent the night there on several occasions, but he did not live there. (Def. 56.1 ¶39; Pl. 56.1 Resp. ¶39.) Henderson purchased the television in the apartment. (Def. 56.1 ¶38; Pl. 56.1 Resp. ¶38; Def. 56.1 Rep. ¶38.)

## LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A factual dispute is 'genuine' only if a reasonable jury could find for either party." *Nichols v. Mich. City Plant Planning Dep't*, 755 F.3d 594, 599 (7th Cir. 2014) (citation omitted). Conversely, "where the factual record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is nothing for a jury to do." *Bunn v. Khoury Enters., Inc.*, 753 F.3d 676, 682 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis in original)). In determining whether a genuine issue of material fact exists, the court construes the evidence and all inferences that reasonably can be drawn therefrom in the light most favorable to the nonmoving party. *See Bunn*, 753 F.3d at 682 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)); *see also Kvapil v. Chippewa County, Wis.*, 752 F.3d 708, 712 (7th Cir. 2014).

## DISCUSSION

### I. Dismissal of John Does 1-6

The parties agree that named Defendants John Doe 1-6 should be dismissed as Henderson has failed to identify them before the close of fact discovery. *See Williams v. Rodriguez*, 509 F.3d 392, 402 (7th Cir. 2007). The Court dismisses John Does 1-6 as Defendants.

### II. Count II

#### A. Henderson Lacks Standing for Search of the Apartment

Gutkowski, Guzman, Stec, McKenna, Matthews, Mingari, Shaar, Geisbush, and Vance ("Officer Defendants") move for summary judgment on Count II for the search of the apartment because they claim that Henderson lacks standing to challenge the search. They point to how

Henderson did not live in the apartment, was not on the lease for it, and did not keep any personal property there. Henderson counters that he does have standing to assert Fourth Amendment rights over the apartment because he was dating Reba, stayed there overnight on several occasions, and purchased the television in the apartment.

"Fourth Amendment rights are personal rights which…may not be vicariously asserted." *Henning v. O'Leary*, 477 F.3d 492, 495 (7th Cir. 2007) (quoting *Rakas v. Illinois*, 439 U.S. 128, 133-34 (1978)). The Court looks at "whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place" when determining if that person can assert Fourth Amendment rights over it. *Minnesota v. Olson*, 495 U.S. 91, 95 (19900 (quoting *Rakas*, 439 U.S. at 143). The person's "subjective expectation of privacy is legitimate if it is 'one that society is prepared to recognize as reasonable.'" *Id.* at 95-96 (quoting *Rakas*, 439 U.S. at 143-44, n.12). The Court considers the following factors in its analysis of standing under the Fourth Amendment:

> (1) whether the defendant had a possessory interest in the place searched; (2) whether he had a right to exclude others from the place searched; (3) whether he exhibited a subjective expectation that the place searched [would] remain free from governmental invasion; (4) whether he took normal precautions to protect his privacy; and (5) whether he was on the premises legitimately.

*United States v. Kelly*, 772 F.3d 1072, 1084 (7th Cir. 2014) (quoting *United States v. Mitchell*, 64 F.3d 1105, 1109 (7th Cir. 1995)). "[A]n overnight guest in a home may claim the protection of the Fourth Amendment, but one who is merely present with the consent of the householder may not." *See Minnesota v. Carter*, 525 U.S. 83, 90 (1998).

Based on these factors, Henderson lacked a reasonable expectation of privacy in the apartment making the search constitutional. It is undisputed that Henderson had no possessory interest in the apartment as he was not a tenant on the lease and he did not live there. Although

7

Henderson occasionally was an overnight guest at the apartment, there is no evidence that he was an overnight guest on the day of the search. *See Olson*, 495 U.S. at 99 (emphasizing fact that an overnight guest sleeps at the premises in finding they have standing to exercise Fourth Amendment rights over it). The record also lacks any fact demonstrating that Henderson had the right to exclude others from the apartment, exhibited an expectation of privacy in it, or took precautions to protect his privacy there. Henderson purchased the television in the apartment and he was on the premises legitimately, but without any other evidence of a subjective reasonable expectation of privacy he does not have standing to assert Fourth Amendment rights over the search of the apartment. The Court therefore grants Officer Defendants' motion for summary judgment on Count II to the extent Henderson seeks relief for the search of the apartment.

### B. Warrant Was Supported by Probable Cause

Defendants next argue that they are entitled to summary judgment on Count II for the search of the apartment and Henderson's person because the search warrant was valid and supported by probable cause. They point to Henderson's failure to provide evidence that Gutkowski—the officer who attested to the statements in the search warrant—made false statements to Judge O'Hara when presenting it for his signature. The search warrant further contains sufficient indicia of reliability according to the Defendants as Doe provided detailed information about his drug purchase from "Tony," the purchase had happened recently, Gutkowski corroborated Doe's statements, and Doe related his account personally to Judge O'Hara. Henderson quarrels with whether Gutkowski and Guzman corroborated Doe's information because at their depositions they could not recall details about their investigation.

<br><br>

He claims that Doe's identification of the apartment's location and Henderson's picture is insufficient corroboration to validate the search warrant.

"An affidavit establishes probable cause to support a search warrant when it sets forth sufficient evidence to convince a reasonable person that a search will uncover evidence of the alleged crime." *United States v. Bell*, 585 F.3d 1045, 1049 (7th Cir. 2009). Where, as in this case, "the affidavit is the only evidence provided to the judge in support of the search warrant, the validity of the warrant rests solely on the strength of the affidavit." *Id.* Challenging a search warrant based solely on the veracity of the supporting affidavit is "tough sledding" because "[t]o survive summary judgment the plaintiffs must 'provide evidence that the officers knowingly or intentionally or with a reckless disregard for the truth made false statements to the judicial officer' and show that 'the false statements were necessary to the judicial officer['s] determination[ ] that probable cause existed.'" *Suarez v. Town of Odgen Dunes, Ind.*, 581 F.3d 591, 596 (7th Cir. 2009) (quoting *Molina ex re. Molina v. Cooper*, 325 F.3d 963, 968 (7th Cir. 2003)). In determining the informant's credibility, the Court considers "(1) the extent to which police corroborated the informant's statements; (2) the degree to which the informant acquired knowledge of the events through first-hand observation; (3) the amount of detail provided; and (4) the interval between the date of the events and the police officer's application for the search warrant" in addition to whether the informant personally testified before the issuing judge. *Bell*, 585 F.3d at 1049. Importantly, "[i]mmaterial misstatements or omissions do not invalidate the warrant." *Suarez*, 581 F.3d at 596 (quotation omitted).

According to the undisputed facts, Doe told Gutkowski that a man named Tony was storing and selling large quantities of heroin from the second floor apartment of a corner building above a storefront at West 59th Street and Rockwell Avenue. (Def. 56.1 ¶8; Pl. 56.1 Resp. ¶8;

Pl. 56.1 Resp., Ex. 10 at 10:2-8.) Doe described Tony as a 45-year old male black with short black hair, medium complexion, 6'3'' tall, and 265 pounds. (Def. 56.1 ¶9; Pl. 56.1 Resp. ¶9.) Doe reported that he had purchased heroin from Tony multiple times over the past 18 months including three times in the last week and within the past 24 hours. (Def. 56.1 ¶10; Pl. 56.1 Resp. ¶10.) Additionally, Doe recounted that Tony stored heroin in a Dorito's bag. (Def. 56.1 ¶11; Pl. 56.1 Resp. ¶11.) Doe appeared before Judge O'Hara and testified to these facts in-person. The judge was able to ask Doe questions and judge his credibility in person. *See Bell*, 585 F.3d at 1049 (Court considers "whether the informant personally appeared and testified before the issuing judge, thus allowing the judge to assess his credibility."). The judge also reviewed the corroboration of Doe's account that Defendants provided to him including that Gutkowski researched the location that Doe had described, printed out pictures of the residence in question, and showed them to Doe for identification, who identified the location. (Def. 56.1 ¶13; Pl. 56.1 Resp. ¶13.) Gutkowski also retrieved pictures of the surrounding buildings. *Id.* Doe then identified the second floor apartment above the storefront at 2600 West 59th Street as the location where "Tony" was storing and selling heroin. (Def. 56.1 Ex. D at 4; Pl. 56.1 Resp. Ex. 1 at 15.) Gutkowski investigated the identity of Tony by researching arrests and residents at the address and searching for service calls and contact cards. (Def. 56. 1 Ex. B at 11:20-22; 13:17-21.) As a result this research, Gutkowski determined that Henderson was "Tony." *Id.* at 11:20-24; 13:17-21. Gutkowski subsequently printed out a picture of Henderson and others and showed them to Doe who identified Henderson as "Tony." *Id.*; Def. 56.1 Ex. C at ¶4.

Henderson falls short of establishing that Judge O'Hara unreasonably issued the search warrant or that Gutkowski intentionally or recklessly misled him with allegedly false statements by Doe. *See Bell*, 585 F.3d at 1049; *Suarez*, 581 F.3d at 596. Henderson takes issue with

Gutkowski's minor misstatement about who drove Doe to identify the apartment, but does not prove that this constituted an intentional or reckless misstatement as is required to successfully challenge the search warrant's validity. *See id.* Henderson also points to Gutkowski and Guzman's inability to remember some details of the investigation at their depositions, which does not create a genuine dispute of material fact because the accuracy of the investigating officers' recollection is not a factor in weighing the credibility of an informant's statement or whether the judge appropriately found probable cause. *See Suarez*, 581 F.3d at 596. Furthermore, Henderson failed to show that the officers intentionally or recklessly provided the judge a falsehood by misremembering who drove Doe. Considering the plethora of details provided by Doe, their corroboration by the officers, and Doe's in-person testimony to Judge O'Hara, Judge O'Hara was reasonably convinced that a search of the apartment would yield evidence of an alleged crime.

Turning to the relevant factors in assessing an informant's credibility, Doe told Gutkowski his relationship with Tony (drug dealer and customer) was directly tied to how Doe gathered the information, which bolsters his credibility. *Bell*, 585 F.3d at 1050 (lack of information about relationship between drug dealer and informant detracted from informant's reliability); *see, e.g., Branson v. Newburgh Police Dep't*, 849 F.Supp.2d 802, 810 (N.D. Ill. 2011) (same). Gutkowski and Guzman adequately corroborated Doe's statements by driving him to the apartment to identify it, showing him a photo array, and researching individuals with connections to the apartment possibly named Tony. Additionally, Doe offered details about the drug transactions that he had conducted personally with Tony including dates and locations, thorough description of Tony's appearance, and the precise location where Tony stored the heroin (a Dorito's bag). Doe purchased heroin from Tony, gave his statement to the officers, and

attested to it in front of Judge O'Hara over the course of approximately one day, which is a very short time period. Lastly, Judge O'Hara was able to judge Doe's credibility as Doe gave his statement in-person. As such, the Court grants Defendants' motion for summary judgment on Count II against all Defendants for the unreasonable search of the apartment and Henderson's person. *See, e.g., Jones v. City of Chicago*, Case No. 14 C 4023, 2016 WL 1730647 at *3 (N.D. Ill. May 2, 2016) (granting motion for summary judgment for Fourth Amendment claim because search warrant relying only on informant's affidavit supported by probable cause considering that informant gave address and description of location of drug purchase, name of drug dealer, details of purchase, two days elapsed in between purchase and statement, and informant gave statement personally to judge).

### C. Officer Defendants Entitled to Qualified Immunity for Search of Apartment and Henderson

The third reason asserted by Officer Defendants for granting summary judgment on Count II is that they are entitled to qualified immunity for the search of the apartment and Henderson. They contend that based on Doe's affidavit supporting the search warrant, it was objectively reasonable to believe that probable cause existed and they demonstrated a good faith belief in the warrant's validity. In response, Henderson claims that there are genuine issues of material fact because the Officer Defendants unreasonably relied on the search warrant as its material facts were not sufficiently corroborated.

When a plaintiff brings a Section 1983 claim against a state actor for execution of a search warrant, "[a]n officer may be personally liable only if '(1) courts have clearly held that a materially similar affidavit previously failed to establish probable cause under facts that were indistinguishable from those presented in the case at hand; or (2) the affidavit is so plainly

deficient that any reasonably well-trained officer would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant.'" *Junkert v. Massey*, 610 F.3d 364, 369 (7th Cir. 2010) (quoting *United States v. Koerth*, 312 F.3d 862, 869 (7th Cir. 2002) (internal quotation omitted)). Examples of when it would be objectively unreasonable to rely on a judicially-approved warrant include where the judge was misled by information in an affidavit that the affiant knew was false or gave with reckless disregard for the truth; where the judge wholly abandoned her judicial role; where the warrant was based on an affidavit utterly lacking in indicia of reliability of probable cause so as to render reliance on it unreasonable; and where the warrant was so facially deficient that the officer cannot reasonably presume it to be valid. *See United States v. Leon*, 468 U.S. 897, 923 (1984).

Henderson relies on *Draine v. Bauman*, 708 F.Supp.2d 693 (N.D. Ill. 2010) and *McCadd v. Murphy*, 763 F.Supp.2d 1018 (N.D. Ill. 2010) as instances where courts recognized that affidavits which were materially similar to Doe's affidavit failed to establish probable cause. In *Draine*, the Court concluded that the defendants were not protected by qualified immunity because the search warrant was not supported by probable cause considering that the informant was anonymous, gave no specific address and misleading information, his statements were uncorroborated, and the officer withheld information from the issuing judge. 708 F.Supp.2d at 700-05. In contrast, as described *supra*, the search warrant was validated by probable cause. In *McCadd*, there were genuine issues of materials fact surrounding the question of probable cause such as where the drugs were located, what they looked like, and whether a police dog uncovered the drugs where they were found. 763 F.Supp.2d at 1028. Here, no genuine issues of material facts exist regarding the indicia of reliability of Doe's affidavit, also explained *supra*. While notable factual distinctions between cases do not always prevent a plaintiff from overcoming a

defense of qualified immunity, the question remains whether "prior decisions gave reasonable warning that the conduct at issue violated constitutional rights[.]" *Estate of Escobedo v. Bender*, 600 F.3d 770, 781 (7th Cir. 2010). *Draine* and *McCadd* failed to give Officer Defendants notice that the circumstances surrounding the search warrant here could belie its validity because the search warrant was in fact bolstered by probable cause.

Similarly, Doe's affidavit was not so plainly deficient that any reasonably well-trained officer would have known that it did not establish probable cause and that he should not have applied for the warrant in light of the Court's finding *supra* Doe's statement was reliable. *See Junkert*, 610 F.3d at 369. Accordingly, as a result of the existence of probable cause for the search warrant the Court grants Officer Defendants' motion for summary judgment to dismiss Count II against them with respect to the search of the apartment and Henderson's person because they are entitled to qualified immunity. *See, e.g., Calhoun v. City of Chicago*, No. 09 C 2200, 2010 WL 4503218 at *3 (N.D. Ill. Oct. 28, 2010) (granting motion for summary judgment on Section 1983 Fourth Amendment claim because officers were protected by qualified immunity considering that search warrant was supported by probable cause).

### D. Dismissal of all Officer Defendants Except Mingari and Shaar for Search of Vehicles

Officer Defendants propose that the Court should grant summary judgment for the search of the vehicle in Count II in favor of Gutkowski, Guzman, Vance, Geisbush, McKenna, Matthews, and Stec because they did not search the vehicles. Henderson seeks to hold these Defendants liable even though they did not perform the search of the vehicles because they failed to intervene in the search.

"[W]hile it is true that a plaintiff must establish a defendant's personal responsibility for any claimed deprivation of a constitutional right, a defendant's direct participation in the deprivation is not required." *Miller v. Smith*, 220 F.3d 491, 495 (7th Cir. 2000). The personal responsibility requirement for a Section 1983 claim is satisfied if the official "acts *or fails to act* with a deliberate or reckless disregard of the plaintiff's constitutional rights." *Id.* (quoting *Crowder v. Lash*, 687 F.2d 996, 1005 (7th Cir. 1982)). As an initial matter, contrary to Officer Defendants' reply Henderson does not assert a new free-standing Section 1983 claim in arguing that an officer who did not search the vehicle can be liable for failing to intervene; rather, he is merely asserting another form of personal responsibility under Section 1983. Turning to the merits of Officer Defendants' argument, no rational trier of fact could conclude that Gutkowski, Guzman, Vance, Geisbush, McKenna, Matthews, and Stec acted with deliberate or reckless disregard for Henderson's rights based on the undisputed facts. The parties do not dispute that these officers did not search either of Henderson's vehicles and that Henderson saw a white officer with a beard leave the apartment with Henderson's car keys. There is no evidence that Gutkowski, Guzman, Vance, Geisbush, McKenna, Matthews, or Stec witnessed the white bearded officer search the vehicles, saw him leave the apartment knowing that he was going to search them, or anything else that could demonstrate deliberate or reckless disregard for Henderson's constitutional rights. The Court accordingly grants Officer Defendants' motion for summary judgment on Count II for the search of the vehicles against Gutkowski, Guzman, Vance, Geisbush, McKenna, Matthews, and Stec. *See, e.g., Lessley v. City of Madison, Ind.*, 654 F.Supp.2d 877, 917-18 (S.D. Ind. 2009) (defendants not liable for search and seizure because they were not personally responsible but only "passive bystanders" as there was no evidence that they "knew of the circumstances that gave rise to plaintiffs' constitutional claims.")

### E. Evidence Does Not Support that Only Gutkowski Searched Henderson

In the same vein of reasoning, Officer Defendants move for summary judgment for Guzman, Shaar, Mingari, Matthews, McKenna, Vance, Geisbush, and Stec with respect to the search of Henderson's person because they did not personally search him. Henderson counters that summary judgment is inappropriate because there is a genuine issue of material fact as to whether Gutkowski was solely responsible for the search of his person. The undisputed facts show that Henderson believes a white officer with a beard searched him and Gutkowski recalls searching Henderson. Based on these facts alone, there are too many loose ends to find that summary judgment is appropriate. There is no evidence that Gutkowski is white, that he had a beard at the time of the search, and that no other Officer Defendants could have been described as white and bearded. Although Officer Defendants succeed on summary judgment for the search of Henderson's person in Count II for other reasons, the Court denies their motion for summary judgment on this claim for all Officer Defendants except Gutkowski on the basis that he was the only officer who searched Henderson.

## III. Counts III & IV

Officer Defendants point to lack of personal involvement again in arguing for summary judgment on Counts III and IV for Stec, Guzman, Shaar, Mingari, Matthews, McKenna, Vance, and Geisbush because they did not participate in Henderson's detainment. Henderson responds that there is a triable fact as to whether these officers are liable for false arrest and imprisonment because it is not necessary to personally restrain the plaintiff to be liable for these claims and they participated in the search that led to Henderson's arrest and detention.

To prove false arrest or false imprisonment in Illinois, "a plaintiff must allege that the defendant caused or procured a restraint of the plaintiff without reasonable grounds to believe

16

that the plaintiff was committing an offense." *Randall v. Lemke*, 726 N.E.2d 183, 186 (Ill. App. Ct. 2000). If the defendant did not personally arrest the plaintiff, she can still be liable for false arrest or imprisonment if she "directed the officers to make the arrest or the defendant's complaint was the sole basis for the arrest." *Boyd v. City of Chicago*, 880 N.E.2d 1033, 1044 (Ill. App. Ct. 2007) (citing *Randall*, 726 N.E.2d 183)). Although this rule was created for private defendants, Illinois courts have found this analysis persuasive in claims for false arrest or imprisonment against a state actor who did not personally arrest the plaintiff. *See Boyd*, 880 N.E.2d at 1044. It is undisputed that Gutkowski arrested Henderson, meaning that the only way for Henderson to succeed in holding the other Officer Defendants liable for false arrest or imprisonment is by establishing that their complaint was the sole source of information for procuring Henderson's arrest. *See id.* The record is void of any evidence that Stec, Guzman, Shaar, Mingari, Matthews, McKenna, Vance, or Geisbush filed a complaint regarding Henderson. Instead, the record shows—and Henderson admits—that these officers only participated in the execution of the search warrant. Accordingly, the Court grants the Officer Defendants' motion summary judgment on Counts III and IV against Stec, Guzman, Shaar, Mingari, Matthews, McKenna, Vance, and Geisbush.

## IV. Count V

Lastly, Officer Defendants move for summary judgment with respect to Stec, McKenna, Matthews, Mingari, Shaar, Geisbush, and Vance on Count V because Henderson cannot show that they commenced or continued a criminal judicial proceeding against him. Henderson, on the other hand, points out that they were involved in the search of the apartment that led to the arrest and filing of criminal charges against him.

In order to prevail on a malicious prosecution claim in Illinois, a plaintiff must prove: "(1) the commencement or continuance of an original criminal or civil judicial proceeding by the defendant; (2) the termination of the proceeding in favor of the plaintiff; (3) the absence of probable cause for such proceeding; (4) the presence of malice; and (5) damages." *Logan v. Caterpillar, Inc.*, 246 F.3d 912, 921-22 (7th Cir. 2001). To establish the first requirement, "the defendant must have initiated the criminal proceeding or 'his participation in it must have been of so active and positive a character as to amount to advice and cooperation.'" *Id.* at 922 (quoting *Denton v. Allstate Ins. Co.*, 504 N.E.2d 756, 760 (Ill. App. Ct. 1987)). The parties agree that Guzman submitted the arrest report about Henderson and Gutkowski prepared the Narcotics Supplementary Report about the execution of the search warrant and filed the criminal complaint against him. The undisputed facts contain no evidence that Stec, McKenna, Matthews, Mingari, Shaar, Geisbush, or Vance reviewed or approved the arrest report or the Narcotics Supplementary Report or any report from the search, or signed the criminal complaint which would allow a reasonable jury to find they fulfilled the first requirement. *Cf., Collier v. City of Chicago*, Case No. 14 C 2157, 2015 WL 5081408 *9 (N.D. Ill. Aug. 26, 2015); *Anderson v. Landrum*, No. 12 C 1902, 2015 WL 1538243 *9 (N.D. Ill. Mar. 31, 2015). In fact, the parties agree that these officers did not participate in the decision to bring criminal charges against Henderson or any of his criminal proceedings and that Gutkowski alone testified at the preliminary hearing. Involvement in the search alone is insufficient to prove that these officers initiated the criminal charges against Henderson. *See, e.g., Burns v. Village of Crestwood*, No. 12-cv-484, 2016 WL 946654 at *12 (N.D. Ill. Mar. 14, 2016) (granting summary judgment for defendant police officers on malicious prosecution claim where they participated in arrest but did not file criminal complaints against plaintiff). Henderson thus failed to prove the first

18

requirement of malicious prosecution against Stec, McKenna, Matthews, Mingari, Shaar, Geisbush, and Vance, and consequently the Court grants their motion for summary judgment on Count V.

## CONCLUSION

For the reasons given above, the Court grants the Defendants' motion for summary judgment leaving claims against Defendants Mingari and Shaar in Count II for the search of the vehicles, Gutkowski in Counts III and IV, and Guzman and Gutkowski in Count V. (Dkt. No. 68.)

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: 7/8/2016